[No. A095434. First Dist., Div. Three. July 15, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER RICHARD ZANDRINO, Defendant and Appellant.

76

**COUNSEL**

Bill Lockyer, Attorney, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan

and Ryan B. McCarroll, Deputy Attorneys General, for Defendant and Appellant.

L. Stephen Turer for Plaintiff and Respondent.

## OPINION

PARRILLI, J.—On May 4, 2000, Peter Richard Zandrino, a former police officer, was charged with five counts of oral copulation and nine counts of lewd acts on a child under age 14. (Pen. Code, § 288, subds. (a) & (c)(1).)[1] The charges concerned four separate victims and alleged lewd conduct from 1969 to 1971 and from 1977 to 1982. Zandrino demurred, claiming the prosecution was barred by applicable statutes of limitations. Specifically, he argued the limitations periods could not be extended or tolled by section 803, subdivision (g) (hereafter section 803(g))[2] because, pursuant to another statute (§ 805.5), the tolling provision does not apply to any offense for which the statute of limitations expired before January 1, 1985. The trial court overruled Zandrino's demurrer, and we summarily denied his subsequent writ petition. (*Zandrino v. Superior Court* (Sept. 12, 2000, A092302) [nonpub. opn.].) Thereafter, following the trial court's denial of a motion to dismiss certain counts of the information for lack of corroboration (§ 995), Zandrino pleaded no contest to five counts of lewd conduct on a child under age 14. He obtained a certificate of probable cause and timely filed this appeal.

---

[1] All statutory references are to the Penal Code.

The trial court dismissed an earlier complaint against Zandrino; however, in a memorandum opinion, we reversed and remanded for reinstatement of the complaint. Based on the recent Supreme Court decision *People v. Frazer* (1999) 21 Cal.4th 737 [88 Cal.Rptr.2d 312, 982 P.2d 180] (*Frazer*), we concluded, "[S]ection 803, subdivision (g) is not an ex post facto law, nor does it facially violate substantive due process principles. [Citation.]" (*People v. Zandrino* (Oct. 25, 1999, A084094) [nonpub. opn.].)

[2] Section 803(g) states, in relevant part: "(g)(1) Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, *was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5.*

"(2) This subdivision applies only if both of the following occur:

"(A) The limitation period specified in Section 800 or 801 has expired.

"(B) The crime involved substantial sexual conduct . . . and there is independent evidence that clearly and convincingly corroborates the victim's allegation. No evidence may be used to corroborate the victim's allegation that otherwise would be inadmissible during trial. . . . .

"(3)(A) This subdivision applies to a cause of action arising before, on, or after January 1, 1994, the effective date of this subdivision, and it shall revive any cause of action barred by Section 800 or 801 if any of the following occurred or occurs: [¶] . . . [¶]

"(ii) The complaint or indictment is or was filed subsequent to January 1, 1997, and it is or was filed within the time period specified within this subdivision."

In his appeal, Zandrino challenges the constitutionality of section 803(g) and renews his statutory construction argument that section 805.5 supercedes section 803(g). He also complains the court did not sentence him in accordance with his plea agreement. Because none of these arguments has merit, we affirm the judgment.

## DISCUSSION

### I. *Section 805.5 Does Not Bar Prosecution of Early Offenses*

Section 805.5 appears at the end of the Penal Code chapter describing limitations periods for criminal actions. It states: "(a) As used in this section, 'operative date' means January 1, 1985. [¶] (b) Except as provided in subdivision (c), this chapter applies to an offense that was committed before, on, or after the operative date. [¶] (c) This chapter does not apply, and the law applicable before the operative date does apply, to an offense that was committed before the operative date, if: [¶] (1) Prosecution for the offense would be barred on the operative date by the limitation of time applicable before the operative date. (2) Prosecution for the offense was commenced before the operative date."

This section was originally enacted in 1984 as part of a new statutory scheme that increased limitations periods for some felonies. (*Stogner v. Superior Court* (2001) 93 Cal.App.4th 1229, 1233 [114 Cal.Rptr.2d 37] (*Stogner*); Stats. 1984, ch. 1270, § 2, p. 4335.) Reflecting the Legislature's concern to avoid ex post facto violations, former section 806, later renumbered 805.5 and amended (Stats. 1986, ch. 248, § 161, p. 1264), provided that the new law would not apply to offenses for which prosecution was already time-barred. (*Stogner, supra,* at p. 1233.) Thus, if an offense would have been time-barred under the law prior to January 1, 1985, it would remain so despite contrary provisions now in effect.

The Legislature later enacted section 803(g), effective January 1, 1994. (Stats. 1993, ch. 390, § 1, p. 2226.) "As originally enacted, section 803(g) stated that where certain serious sex offenses were allegedly committed against a victim who was under age 18 at the time, and where the 'limitation period specified in Section 800 or 801 has expired,' a criminal complaint is nonetheless timely if it is filed 'within one year of the date of a report to a law enforcement agency' by the victim about the crime." (*Frazer, supra,* 21 Cal.4th at pp. 744-745, fn. omitted.) Prosecutors responded by filing child molestation charges based on the date of victims' reports and without regard to when the alleged crimes actually occurred. (*Id.* at p. 745.) Some courts found no statutory or constitutional bar to such charges (*ibid.*); however, in

1995 and 1996, several Court of Appeal decisions refused to apply section 803(g) "retroactively" to permit prosecution of offenses that were time-barred as of the statute's effective date (Jan. 1, 1994). (*Frazer, supra,* at p. 745; *Stogner, supra,* 93 Cal.App.4th at p. 1234.)

In response to these decisions (see *Frazer, supra,* 21 Cal.4th at p. 746 ["Judicial reluctance to apply section 803(g) in older child molestation cases did not go unnoticed by the Legislature."]), "the Legislature amended section 803(g) to declare that '[t]his subdivision applies to a cause of action arising *before, on, or after January 1, 1994,* the effective date of this subdivision, and if the complaint is filed within the time period specified in this subdivision, *it shall revive any cause of action barred by Section 800 or 801.*' (Stats. 1996, ch. 130, § 1 (the 1996 amendment) [Assem. Bill No. 2014, adding § 803(g)(3)(A)], italics added.)" (*Stogner, supra,* 93 Cal.App.4th at p. 1234, fn. omitted.)

 Despite the clear language in section 803(g) authorizing the prosecution of old, though recently reported, child molestation cases, Zandrino relies on section 805.5 to argue the charges against him were barred because their statutes of limitations—three or six years (§§ 800, 801)—had expired by January 1, 1985.[3] Clearly, with respect to certain offenses, sections 803(g) and 805.5 conflict. For child molestation crimes committed before 1982, the three-year statute of limitations expired before January 1, 1985, making prosecution for such crimes time-barred as of January 1, 1985. Under these circumstances, section 805.5 directs that the limitations law *prior to* January 1, 1985 applies; therefore the crimes remain time-barred. However, section 803(g) clearly states that a criminal complaint for child molestation may be prosecuted, even after the statute of limitations has expired, so long as certain requirements are met (i.e., the complaint is brought within one year after the victim's report to law enforcement, the crime involved substantial sexual conduct, and there is sufficient independent corroborating evidence). Thus, in contrast to section 805.5, the plain language of section 803(g) permits the prosecution of molestation offenses that occurred before 1982 and would have been time-barred as of January 1, 1985.

Zandrino contends the general rule of section 805.5 controls and should be construed as an outside limit on the retroactive reach of section 803(g). In other words, according to Zandrino, the prosecution of a time-barred sex offense under section 803(g) is permissible *only* if the statute of limitations for the offense had not expired as of January 1, 1985.

---

[3]The premise of his argument fails, however, for the eight charges that alleged misconduct continuing into 1982.

Just one week after Zandrino filed his opening brief on appeal, the First District Court of Appeal, Division Five, published a detailed opinion rejecting the same statutory argument Zandrino makes here. (*Stogner, supra,* 93 Cal.App.4th 1229.) As the court observed in *Stogner,* the opening phrase of section 803(g), "[n]otwithstanding any other limitation of time described in this chapter . . . ." (§ 803(g)(1)), makes section 803(g) an exception to other provisions in the chapter—including section 805.5. (*Stogner, supra,* at p. 1236.)[4] This construction is also supported by the maxim that "[a] special statute, dealing specifically with the particular criminal act involved, will control or supersede the general statute, in whole or in part" when the two cannot be reconciled. (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Crimes, § 59, p. 103.) Section 803(g) creates a specialized procedure for the prosecution of late-reported child molestation offenses, whereas section 805.5 states a general prohibition against retroactive revivals of time-barred prosecutions. In the event they conflict, the more specific law, section 803(g), should prevail. (See *People v. Gilbert* (1969) 1 Cal.3d 475, 481 [82 Cal.Rptr. 724, 462 P.2d 580].)

Moreover, the precedence of section 803(g) over section 805.5 appears most consistent with legislative intent. ▋ " 'The primary duty of a court when interpreting a statute is to give effect to the intent of the Legislature, so as to effectuate the purpose of the law. [Citation.] . . . Ultimately, the court must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and it must avoid an interpretation leading to absurd consequences. [Citation.]' [Citation.]" (*Stogner, supra,* 93 Cal.App.4th at p. 1236.)

After describing the difficulties child molestation victims face in reporting these crimes, the court in *Stogner* observed: "The legislative purpose behind section 803(g) was to prevent sex offenders from reaping the benefits of their victim's immaturity and psychological trauma, and the legislative history plainly indicates that section 803(g) was intended to create an exception to the statutes of limitations. (See, e.g., Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 290 (1993-1994 Reg. Sess.) Apr. 13, 1993, pp. 2-3; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 290 (1993-1994 Reg. Sess.) July 13, 1993, pp. 2-3.) [¶] Furthermore, the 1996

---

[4]Zandrino echoes the argument—rejected in *Stogner* (*Stogner, supra,* 93 Cal.App.4th at p. 1236)—that the phrase cannot refer to section 805.5 because section 805.5 does not create a limitations period. But section 805.5 effectively operates as a limitation of time because, for offenses that were time-barred as of January 1, 1985, it imports limitations periods applicable under prior law. As the court in *Stogner* explained, "section 803(g) creates an exception to other limitations periods, *even those limitations periods referred to in section 805.5 that had expired before January 1, 1985.*" (*Stogner,* at p. 1236, italics added.)

amendment to section 803(g) was intended to maximize the impact of the statute by ensuring that the prosecution's ability to file charges is 'revive[d]' regardless of the passage of time between the commission of the crime and the commencement of prosecution, as long as the charges are filed within one year of the victim's report. 'Sex crimes committed against children are the most heinous of offenses. Unfortunately, many don't bring the crime to the attention [of] law enforcement until many years later, when the statute of limitations has already expired. Children become double victims—first victimized by the perpetrator and again by the judicial system. This measure will *guarantee* them their day in court.' (Assem. Com. on Pub. Safety, Analysis of Assem. Bill. No. 2014 (1995-1996 Reg. Sess.) Apr. 9, 1996, p. 1 [according to the author], italics added.)" (*Stogner, supra,* 93 Cal.App.4th at p. 1237.) Noting that the 1996 amendments were expressly designed to override certain Court of Appeal decisions and ensure the retroactive application of section 803(g), the *Stogner* court concluded: "There is no hint in the legislative history that less than complete retroactivity was intended, so long as charges were filed within one year of the victim's report." (*Stogner,* at p. 1237.)

▇ Giving precedence to section 803(g) over section 805.5 is most consistent with this legislative intent that prosecutions for sex crimes against children proceed regardless of when the offenses were committed. Moreover, Zandrino's interpretation leads to absurd consequences because it makes the statute of limitations turn upon the *date* the offense was committed, rather than the length of time elapsed between commission of the offense and prosecution. Under Zandrino's view, an offense committed in 1981 and subject to a three-year statute of limitations would be time-barred as of January 1, 1985 (per § 805.5) and not subject to prosecution in 1996 (i.e., under § 803(g)). But if the perpetrator continued to commit the same offense in 1982, the case would not be time-barred as of January 1, 1985, and it could be prosecuted in 1996, or 2006, or anytime the victim made an appropriate report. Whereas the 15-year-old offense in the first example would be barred, no such bar would apply to a 30-year-old offense in the second example. (See *Stogner, supra,* 93 Cal.App.4th at pp. 1238-1239 [discussing a similar scenario].)

Zandrino urges us to reject *Stogner* in favor of *Lynch v. Superior Court* (1995) 33 Cal.App.4th 1223 [39 Cal.Rptr.2d 414]. The Supreme Court expressly disapproved *Lynch*'s primary holding that section 803(g) is an improper ex post facto law. (*Frazer, supra,* 21 Cal.4th at p. 765.) While Zandrino may be correct that *Lynch*'s discussion of section 805.5 "remains good law" following *Frazer,* that discussion is dictum and does not offer a thorough or persuasive analysis. After it decided section 803(g) violated ex

post facto principles, the *Lynch* court quoted section 805.5 and simply declared: "[S]ection 805.5, subdivision (c)(1) leaves no doubt that the extended limitations period provided in section [803(g)] . . . is not applicable here because the prior limitations period expired in 1975." (*Lynch v. Superior Court, supra,* at p. 1228.) Unlike *Stogner,* the *Lynch* decision includes no analysis of the statutes or legislative history. We reject its bare conclusion and agree instead with the analysis set forth in *Stogner.*

## II. *Section 803(g) Is Constitutional*

### A. *Section 803(g) Is Not an Ex Post Facto Law*

In *Frazer, supra,* 21 Cal.4th 737, the California Supreme Court held section 803(g) does not violate federal or state constitutional proscriptions against ex post facto laws. We are bound by this decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Nevertheless, Zandrino urges us to revisit the issue. He contends a recent United States Supreme Court decision, *Carmell v. Texas* (2000) 529 U.S. 513 [120 S.Ct. 1620, 146 L.Ed.2d 577] (*Carmell*), indicates *Frazer* is flawed because its analysis rests on a "well-entrenched misinterpretation" of ex post facto prohibitions.

The opinion of Justice Chase in *Calder v. Bull* marks the beginning of Supreme Court jurisprudence on the ex post facto clause. (*Calder v. Bull* (1798) 3 U.S. (3 Dall.) 386 [1 L.Ed. 648] (*Calder*) (opn. of Chase, J.).) Justice Chase outlined four types of impermissible ex post facto laws: (1) A law that criminalizes and punishes an act that was innocent when done; (2) a law that aggravates a crime, making it greater than it was when done; (3) a law that inflicts a greater punishment for a crime than attached when the crime was done; and (4) a "law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." (*Id.* at p. 390 [1 L.Ed. at p. 650, italics omitted.) Later federal cases reduced Justice Chase's formulation to a two-part definition, stating that laws violate the ex post facto clause if they redefine the criminal nature of an act or increase the punishment for a criminal act. (See *Collins v. Youngblood* (1990) 497 U.S. 37, 43 [110 S.Ct. 2715, 2719-2720, 111 L.Ed.2d 30] (*Collins*); *Beazell v. Ohio* (1925) 269 U.S. 167, 169-170 [46 S.Ct. 68, 68-69, 70 L.Ed. 216] (*Beazell*).) The "almost talismanic" repetition of this two-part definition in *Collins,* and the analysis of ex post facto principles in that case, led our Supreme Court to deduce in *Frazer* that "the two categories of impermissible retroactive legislation—redefining criminal conduct and increasing punishment—are exclusive." (*Frazer, supra,* 21 Cal.4th at p. 756.) Relying on the

tests set forth in *Beazell* and *Collins*, the *Frazer* court reasoned section 803(g) did not fit the definition of an ex post facto law: "Statutes regulating the time at which a future criminal prosecution may be filed do not implicate the manner in which criminal conduct is defined and punished at the time it occurs—the sole concern of the ex post facto clause." (*Frazer*, at p. 763.)

However, the United States Supreme Court recently revisited its ex post facto jurisprudence. Despite shorthand formulations in *Collins* and *Beazell*, the court held *Calder*'s fourth category remains viable and continues to describe a class of impermissible ex post facto laws. (*Carmell, supra,* 529 U.S. at pp. 534-539 [120 S.Ct. at pp. 1633-1636].) The court explained: "A law reducing the quantum of evidence required to convict an offender is as grossly unfair as, say, retrospectively eliminating an element of the offense, increasing the punishment for an existing offense, or lowering the burden of proof [citation]. In each of these instances, the government subverts the presumption of innocence by reducing the number of elements it must prove to overcome that presumption; by threatening such severe punishment so as to induce a plea to a lesser offense or a lower sentence; or by making ·it easier to meet the threshold for overcoming the presumption. Reducing the quantum of evidence necessary to meet the burden of proof is simply another way of achieving the same end. [Fn. omitted.]" (*Id.* at pp. 532-533 [120 S.Ct. at pp. 1632-1633].)

The Texas statute at issue in *Carmell* fell squarely within the fourth *Calder* category because, as retroactively applied, an amendment to the statute allowed the petitioner to be convicted of sexual assault based on the victim's testimony alone, whereas previously the law required both the victim's testimony *and* corroborating evidence. (*Carmell, supra,* 529 U.S. at pp. 530-531 [120 S.Ct. at pp. 1631-1632].) The amended law clearly "changed the quantum of evidence necessary to sustain a conviction." (*Id.* at p. 530 [120 S.Ct. at p. 1631].)

In contrast, section 803(g) merely addresses when the state may prosecute certain criminal charges. It does not alter the elements of these offenses, or their punishment, or the amount or type of evidence required "in order to convict the offender." (*Calder, supra,* 3 U.S. (3 Dall.) at p. 390 [1 L.Ed. at p. 650], italics omitted (opn. of Chase, J.).)[5] Indeed, unlike an ex post facto law, in which "the government refuses, after the fact, to play by its

---

[5]Our Supreme Court implicitly made this distinction in *Frazer*. Noting the United States Supreme Court had recently granted certiorari in *Carmell*, the court observed: "The 'outcry statute' at issue in *Carmell*—unlike section 803(g)—does not appear to operate as a statute of limitations governing the time at which criminal charges may be filed." (*Frazer, supra,* 21 Cal.4th at p. 755, fn. 16.)

own rules, altering them in a way that is advantageous only to the State, to facilitate an easier conviction" (*Carmell, supra,* 529 U.S. at p. 533 [120 S.Ct. at p. 1633]), section 803(g) actually *increases* the procedural burdens on the government. Before a prosecution brought under section 803(g) can proceed, the government must show the offense involved "substantial sexual conduct" and must produce "independent evidence that clearly and convincingly corroborates the victim's allegation." (§ 803(g)(2)(B).)[6]

In short, we do not believe the high court's analysis in *Carmell* undermines the legitimacy of *Frazer*. Section 803(g) does not meet the definition of an ex post facto law.

### B. *Section 803(g) Is Not Impermissibly Vague*

Zandrino also complains section 803(g) is "so vague, ambiguous and confusing that it violates the right to due process."[7] In *Frazer*, the Supreme Court rejected a challenge to section 803(g) under the due process clause, reasoning that criminal defendants do not have a fundamental "right to repose" under an expired statute of limitations. (*Frazer, supra,* 21 Cal.4th at pp. 765-766, 772.) However, the high court did not address Zandrino's vagueness argument.

Zandrino attacks the statutory requirement for the state to produce "independent evidence that clearly and convincingly corroborates the victim's allegation" before a revived prosecution can proceed. (§ 803(g)(2)(B).) Because the statute fails to identify the type of evidence required, Zandrino asserts prosecutors will improperly rely on "propensity evidence," i.e., evidence of other similar crimes, indicating the defendant's propensity to commit the alleged offense. He argues at length that evidence of other crimes, standing alone, should not suffice to show corroboration, but instead some corroborative evidence must be presented directly linking the defendant with the presently charged offense. From this, Zandrino concludes section 803(g) is constitutionally deficient because it does not circumscribe the use of propensity evidence as proof of corroboration.

---

[6]We reject Zandrino's unfounded assertion that section 803(g)'s requirement of corroboration shown by clear and convincing evidence somehow "corrupt[s]" the state's burden of proof beyond a reasonable doubt, allowing it to secure convictions upon lesser evidence than otherwise required. Jurors are often asked to apply different standards of proof (e.g., *People v. Carpenter* (1997) 15 Cal.4th 312, 380-382 [63 Cal.Rptr.2d 1, 935 P.2d 708] [jury may consider evidence of other crimes if it finds by a preponderance of evidence the defendant committed them]), and they are presumed capable of understanding and following the court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 [111 Cal.Rptr.2d 129, 29 P.3d 209].)

[7]We must consider this claim despite its absence in Zandrino's certificate of probable cause for appeal. (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1174 [43 Cal.Rptr.2d 827, 899 P.2d 896].)

Recent appellate decisions have clearly disagreed with Zandrino about the probative value of similar incidents in corroborating a victim's allegation under section 803(g). In *People v. Yovanov* (1999) 69 Cal.App.4th 392, 403 [81 Cal.Rptr.2d 586], the court observed evidence of prior sex offenses is " 'indisputably relevant in a prosecution for another sexual offense.' (*People v. Fitch* (1997) 55 Cal.App.4th 172, 179 [63 Cal.Rptr.2d 753].)" The court held: "Given the significant probative value of uncharged sexual misconduct in sex crimes cases, . . . evidence of such can be used to corroborate a victim's allegation of sexual abuse under section 803(g)." (*People v. Yovanov, supra,* at p. 404; see also *People v. Soto* (1998) 64 Cal.App.4th 966, 989 [75 Cal.Rptr.2d 605] [noting "propensity evidence has a unique probative value in sexual assault trials"].) Moreover, in *People v. Mabini* (2001) 92 Cal.App.4th 654, 658-659 [112 Cal.Rptr.2d 159] (*Mabini*), the court concluded that evidence of a single uncharged offense against a different victim provided sufficient corroboration under section 803(g)(2)(B). Contrary to Zandrino's attempt to distinguish the case, *Mabini* squarely faced the argument raised in this appeal. Noting, "we must decide whether evidence of appellant's sexual misconduct against an uncharged victim, standing alone, constitutes sufficient corroboration," the court concluded it did. (*Mabini,* at p. 659.)

Thus, under *Mabini,* evidence that the defendant committed a similar sexual offense against a different victim can indeed constitute sufficient corroboration for purposes of section 803(g). (*Mabini, supra,* 92 Cal.App.4th at p. 659 ["[W]e hold that such evidence, if credited by the trier of fact, may *standing alone* constitute independent evidence that clearly and convincingly corroborates the victim's allegation" (italics added)].) Zandrino's argument to the contrary rests entirely on cases discussing the evidence necessary to support a *conviction.* (E.g., *People v. James* (2000) 81 Cal.App.4th 1343, 1353 [96 Cal.Rptr.2d 823] [noting "propensity evidence alone cannot meet the prosecution's burden of proving the elements of the charged offense"].) In *People v. James,* for example, we disapproved of an instruction that invited the jury to infer a defendant's guilt from evidence he had committed other similar offenses. (*Id.* at pp. 1353-1354.) But there is an important difference between the use of propensity evidence to prove the ultimate fact of guilt and reliance on such evidence to satisfy the procedural burden of corroboration under section 803(g). While the former raises significant due process concerns (see *James,* at pp. 1353-1357), the latter does not. (See *Frazer, supra,* 21 Cal.4th at pp. 765-772 [holding a criminal defendant has no fundamental right to repose under an expired statute of limitations].)

But even if Zandrino is correct that propensity evidence may not provide the sole evidence of corroboration (a question not squarely presented in this

appeal), it does not follow that section 803(g) violates due process because it does not expressly forbid exclusive reliance on such evidence. ■ " 'In determining a statute's constitutionality, we start from the premise that it is valid, we resolve all doubts in favor of its constitutionality, and we uphold it unless it is in clear and unquestionable conflict with the state or federal Constitutions. [Citation.] A challenge to a statute's constitutionality must demonstrate that its provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions. [Citation.] The corollary to the challenger's burden is that if the court can conceive of a situation in which the statute can be applied without entailing an inevitable collision with constitutional provisions, the statute will prevail.' [Citation.]" (*Clare v. State Bd. of Accountancy* (1992) 10 Cal.App.4th 294, 303 [12 Cal.Rptr.2d 481].) ■ Certainly section 803(g) is not unconstitutionally vague per se, since, as Zandrino concedes, cases will arise in which the prosecution establishes corroboration by direct evidence (such as, for example, testimony from someone who witnessed the sexual abuse). Nor does Zandrino attempt to show section 803(g) is unconstitutional as applied to him. Although Zandrino brought a motion to dismiss challenging the adequacy of corroborating evidence as to some of the charges against him, he has not renewed these arguments on appeal. Moreover, because Zandrino pleaded no contest, a jury was never asked to decide whether the state's evidence of corroboration was sufficient to permit the prosecution of old offenses under section 803(g). ■ ■ ■ (See *People v. Zamora* (1976) 18 Cal.3d 538, 565, fn. 26 [134 Cal.Rptr. 784, 557 P.2d 75] [at a preliminary hearing, the state must present evidence showing probable cause to believe prosecution is not barred by the statute of limitations, but the ultimate decision on the limitation issue is for the trier of fact].)[8]

## III. *No Sentencing Error*

Finally, Zandrino complains he was not sentenced in accordance with the plea agreement. Zandrino pleaded no contest to five counts of lewd conduct on a child under age 14, and in return the prosecution agreed to dismiss the remaining counts alleging lewd conduct and oral copulation. Although the prosecutor and defense counsel apparently believed the plea would result in determinate sentences totaling no more than seven years eight months, the

---

[8]For the same reason, Zandrino's concern that juries will become confused by the clear and convincing standard of proof for corroboration—and will apply this lesser standard rather than holding the prosecution to its burden of proving guilt beyond a reasonable doubt—is entirely hypothetical and not a proper basis for overturning his conviction. "An appellate court will not review questions which are moot and which are only of academic importance. It will not undertake to determine abstract questions of law at the request of a party who shows that no substantial rights can be affected by the decision either way. [Citations.]" (*Keefer v. Keefer* (1939) 31 Cal.App.2d 335, 337 [87 P.2d 856].)

trial court imposed a determinate sentence of 10 years four months. This sentence reflected an aggravated term on one count and one-third of the base term on two counts.

Zandrino's claim on appeal fails because the record of the change of plea hearing clearly indicates the parties did not have an agreement as to the ultimate sentence that would be imposed. The prosecutor stated her belief that the plea would expose Zandrino to a maximum term of seven years eight months under three determinate sentences, plus an additional two indeterminate sentences the court could impose. However, she also advised the court, "There is no agreement as to what the sentence will be at this time." Indeed, Zandrino expressly affirmed his understanding that the agreement did not extend to his sentence. He also understood a different judge would decide his sentence than the judge who accepted his plea.

Zandrino does not claim the state failed to honor its end of the plea agreement, nor does he contend the trial court erred in calculating his sentence. He has provided no legal basis for this court to disturb the sentence.

### DISPOSITION

The judgment is affirmed.

Corrigan, Acting P. J., and Pollak, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 30, 2002.